

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2009 SEP -2  PM 12: 26

LORETTA G. WHYTE
CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| SLIDELL PROPERTY MANAGEMENT, L.L.C. * | CASE NO.: **09-6068** |
| **Plaintiff,** * | |
| v. * | **SECT. L MAG. 2** |
| KNAUF GIPS KG; KNAUF PLASTERBOARD * | **COMPLAINT** |
| TIANJIN CO., LTD.; KNAUF * | |
| PLASTERBOARD WUHU CO., LTD.; * | |
| KNAUF PLASTERBOARD DONGGUAN CO., * | |
| LTD.; SPRINGHILL, L.L.C.; SOUTHERN * | |
| HOMES, L.L.C. f/k/a SOUTHERN HOMES, * | |
| INC.; and ADRIAN KORNMAN * | **JURY TRIAL DEMANDED** |
| **Defendants.** * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, SLIDELL PROPERTY MANAGEMENT, L.L.C., brings this action against Defendants, KNAUF GIPS KG ("Knauf Gips"); KNAUF PLASTERBOARD TIANJIN CO., LTD. ("Knauf Tianjin"); KNAUF PLASTERBOARD WUHU CO., LTD. ("Knauf Wuhu"); KNAUF PLASTERBOARD DONGGUAN CO., LTD. ("Knauf Dongguan"); SPRINGHILL, L.L.C. ("Springhill"); SOUTHERN HOMES, L.L.C., formerly known as SOUTHERN HOMES, INC. ("Southern Homes"); and ADRIAN KORNMAN (collectively referred to as "Defendants"), and for their complaint allege, upon information and belief, as follows:

## INTRODUCTION

1.   Plaintiff brings this action as owner of forty-two (42) homes in the State of Louisiana that were designed, built, and/or constructed by Defendants, Springhill, Southern Homes, and/or Adrian Kornman (hereinafter "Builder Defendants"),

Fee $350.
Process
X Dktd
CtRmDep
Doc. No.

Upon information and belief, Plaintiff's Homes contain and were constructed and/or built using defective products and components including, but not limited to, drywall and related components which were delivered, supplied, and/or sold to Defendants, Springhill, Southern Homes, and/or Adrian Kornman by Defendants, Knauf Gips, Knauf Tianjin, Knauf Wuhu, and/or Knauf Dongguan. The drywall and related components in the Plaintiff's Homes at 1000 Clairise Court, 1001 Clairise Court, 1004 Clairise Court, 1005 Clairise Court, 1008 Clairise Court, 1009 Clairise Court, 1012 Clairise Court, 1013 Clairise Court, 1016 Clairise Court, 1017 Clairise Court, 1020 Clairise Court, 1021 Clairise Court, 1024 Clairise Court, 1025 Clairise Court, 1028 Clairise Court, 1029 Clairise Court, 1032 Clairise Court, 1033 Clairise Court, 1036 Clairise Court, 1037 Clairise Court, 1040 Clairise Court, 1041 Clairise Court, 1044 Clairise Court, 1045 Clairise Court, 1048 Clairise Court, 1049 Clairise Court, 1052 Clairise Court, 1053 Clairise Court, 1057 Clairise Court, 1061 Clairise Court, 1065 Clairise Court, 1069 Clairise Court, 1072 Clairise Court, 1073 Clairise Court, 1076 Clairise Court, 1080 Clairise Court, 1084 Clairise Court, 1088 Clairise Court, 1089 Clairise Court, 1092 Clairise Court, 1096 Clairise Court, and 1100 Clairise Court (hereinafter "Plaintiff's Homes"), all in Slidell, Louisiana 70461, were manufactured, processed, distributed, delivered, supplied, inspected, marketed, installed, utilized, and/or sold by the Defendants.

2.      The drywall used to build Plaintiff's Homes is defective and emits levels of hydrogen sulfide, strontium sulfide, carbonyl sulfide, sulfur dioxide, carbon

disulfide, methane, and/or other volatile organic compounds that cause corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items, as well as creates noxious, "rotten egg-like" odors and other damages. The drywall is inherently defective and not suitable for its intended use.

## JURISDICTION AND VENUE

3. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

4. This Honorable Court has proper Subject Matter Jurisdiction pursuant to 28 U.S.C. §1332 (a)(2), as Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan are German and/or Chinese companies and, therefore, German and/or Chinese citizens.

5. Venue for this cause is proper in the Eastern District of Louisiana, pursuant to and in accordance with 28 U.S.C. §1391.

6. Furthermore, this Honorable Court has Subject Matter Jurisdiction and Venue is proper pursuant to paragraph 22 of the Purchase Agreement between Plaintiff and the Builder Defendants.

## THE PARTIES

7. Plaintiff, SLIDELL PROPERTY MANAGEMENT, L.L.C., is a Delaware limited liability company with its Principal Place of Business in Louisiana at 1280 Clausel Street, Mandeville, Louisiana 70448.

8.      Upon information and belief, Defendant, Knauf Gips, is a German corporation
doing business in the State of Louisiana.  Knauf Gips is a leading manufacturer
of building materials and systems.  Defendant, Knauf Gips, together with its
affiliates, including Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf
Dongguan, provides building materials and systems to customers in over 50
countries, including the United States. Upon information and belief, at all material
times hereto, Defendant, Knauf Gips, supervised, operated, trained and
otherwise exercised control over and/or had the right to control the operations of
Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, and their agents,
apparent agents and employees.

9.      Among other things, in 1995, Defendant, Knauf Gips, introduced its production
techniques and technology into China. From 1997 through 2001, Defendant,
Knauf Gips, established at least three plasterboard plants in China located in
Wuhu, Tianjin and Dongguan. The product quality of all Defendant, Knauf Gips',
plants in China, including Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf
Dongguan, is strictly controlled according to the requirements of Knauf Gips'
headquarters in Germany. Defendant, Knauf Gips' sales and technical support
teams support Knauf Gips' businesses throughout the world, including
Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, in China.
Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, and their
employees are the actual and/or apparent agents of Defendant, Knauf Gips.

10.    Upon information and belief, Defendant, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Defendants, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, manufactured, sold, distributed, marketed and placed into the stream of commerce drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana. Defendants, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, and/or Knauf Gips, have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Louisiana and their tainted drywall was installed in numerous homes in Louisiana.  Moreover, Defendants, Knauf Gips, Knauf Wuhu, Knauf Dongguan, and/or Knauf Tianjin, purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

11.    Upon information and belief, Defendant, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the State of Louisiana.

12.    Upon information and belief, Defendant, Knauf Plasterboard Wuhu Co., Ltd., is a Chinese corporation with its principal place of business located at 2 Gang Wan Road, Wuhu Anhui, 241009 P.R.C., and at all times material, conducted business in the State of Louisiana.

13.    Upon information and belief, Defendant, Knauf Plasterboard Dongguan Co., Ltd., is a Chinese corporation with its principal place of business located at 2 Xinsha Development Zone, Machong County, Dongguan, Guangdong, 523147 P.R.C., and, at all times material, conducted business in the State of Louisiana.

14.    Defendants, Knauf Dongguan, Knauf Wuhu, and Knauf Tianjin, are involved in the manufacturing and sale of drywall. Defendants, Knauf Dongguan, Knauf Wuhu, and Knauf Tianjin, are the actual and/or apparent agents of Defendant, Knauf Gips.

15.    Upon information and belief, Defendants, Knauf Dongguan, Knauf Wuhu, and Knauf Tianjin, individually, collectively, and/or together with and at the direction and control of its principal, Defendant, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce tainted drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Louisiana.

16.    Defendants, Knauf Dongguan, Knauf Wuhu, Knauf Tianjin, and/or Knauf Gips, have continuously and systematically distributed and sold tainted drywall to numerous purchasers in the State of Louisiana and their drywall was installed in numerous homes in Louisiana. Defendants, Knauf Tianjin, Knauf Dongguan, Knauf Wuhu, and/or Knauf Gips, manufactured and sold, directly and indirectly, defective drywall that was installed in Plaintiff's Homes. Moreover, Defendants, Knauf Gips, Knauf Dongguan, Knauf Wuhu, and/or Knauf Tianjin, purposefully availed themselves of the jurisdiction of this Court by selling and shipping

-6-

substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

17.    Upon information and belief, at all times material hereto SPRINGHILL, a Louisiana Limited Liability Company, was and is a company authorized to conduct business in Louisiana and to do business in St. Tammany Parish and was the developer and/or general contractor of Plaintiff's Homes.

18.    Upon information and belief, at all times material hereto SOUTHERN HOMES, a Delaware Limited Liability Company, was and is a company authorized to conduct business in Louisiana and to do business in St. Tammany Parish and was the developer and/or general contractor of Plaintiff's Homes.    Further, Southern Homes is a resident of Louisiana via its sole member and/or manager Adrian Kornman, who is a Louisiana domiciliary.

19.    Upon information and belief, at all times  material hereto ADRIAN KORNMAN, a Louisiana resident, was and is the owner, President, member, manager and/or CEO of Defendants, Springhill and  Southern Homes, and was the developer and/or general contractor of Plaintiff's Homes.

20.    This Court has personal jurisdiction over Defendants because they are engaged in substantial and not isolated activity within this state. Additionally, Plaintiff's causes of action arise from Defendants, personally or through their agents, causing damage to property within the State of Louisiana arising out of acts or omissions of Defendants outside the State of Louisiana, and at the time of the

damage, products, materials, or things manufactured by Defendants were used and consumed within the State of Louisiana in the ordinary course of commerce, trade or use. Further, Defendants, Springhill, Southern Homes, and Adrian Kornman, are Louisiana residents as described above.

## GENERAL ALLEGATIONS

21.    Defendants negligently manufactured, processed, distributed, marketed, sold, installed, and/or utilized defective drywall, that was unreasonably damaging in its normal use in that the drywall caused corrosion to HVAC coils, refrigerator units, certain electrical wiring and plumbing components.

22.    Upon information and belief, Defendants' drywall contains damaging components including, but not limited to, iron disulfide, fly ash and industrial waste products. These materials can leak into the air and emit damaging gases including, but not limited to, hydrogen sulfide, strontium sulfide, carbonyl sulfide, sulfur dioxide, carbon disulfide, methane and/or other volatile organic compounds that cause damage to property.

23.    The Defendants' drywall and the gases that it emits, cause and contribute to contamination of Plaintiff's Homes and to problems including, but not limited to, corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, exposed metals, pipes, fixtures, framing and rough carpentry hardware, nails and other household items and building materials, as well as create noxious, "rotten egg-like" odors. The drywall is inherently defective and not suitable for its intended use.

-8-

24.    Defendants' actions will require Plaintiff to remedy all defective drywall, perform extensive remedial repairs to Plaintiff's Homes, and then repair the damaged property made visible during the performance of these remediations.

25.    Plaintiff has suffered, and continues to suffer, damages as a result of Defendants' defective drywall and the corrosive effects of the emitted gases. These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes, personal property, and clean-up after removal.

26.    Defendants' actions also resulted in substantial diminution in the value of Plaintiff's Homes, including, but not limited to damages due to a stigma effect related to the presence of defective drywall in a large percentage, if not all, of Plaintiff's Homes.

### EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

27.    Although Plaintiff claims that the statute of limitations has not run in this matter, the running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiff and misrepresenting their product as fit for its intended use, actively concealed from Plaintiff the true risks associated with their defective drywall.

28.    As a result of Defendants' actions, Plaintiff could not reasonably know or have learned through reasonable diligence of the drywall defects and that Plaintiff's Homes had been subjected to the damages alleged herein and that those damages were a direct and proximate result of Defendants' acts and omissions.

29.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had exclusive control, and because Defendants knew that this information was not available to the Plaintiff. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

30.    Plaintiff had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time.

### COUNT I
### VICARIOUS LIABILITY
### (Against Defendant Knauf Gips)

31.    Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

32.    This is an action for vicarious liability against Defendant, Knauf Gips, for the negligent and wrongful acts of its actual and/or apparent agents, Defendants, Knauf Tianjin, Knauf Dongguan, and/or Knauf Wuhu.

33.    Defendant, Knauf Gips, established Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, in China and at all times material, exercised strict control over Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, operations in

accordance with the requirements of Defendant, Knauf Gips', headquarters in Germany. Defendant, Knauf Gips, is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu.

34.    By establishing Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, in China, and by exercising strict control over Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, conduct and operations, Defendant, Knauf Gips, acknowledged that Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, would act on its behalf as its actual and/or apparent agents.

35.    Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, accepted the undertaking to act on Defendant, Knauf Gips', behalf.

36.    Upon information and belief, Defendant, Knauf Gips, supervises, monitors, and controls Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendants, Knauf Tianjin's, Knauf Dongguan's, and Knauf Wuhu's, drywall products. Furthermore, upon information and belief, Defendant, Knauf Gips, is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu.

37.    As such, Defendant, Knauf Gips, is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agents, Defendants, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu.

38.  As a result of Defendants, Knauf Gips', Knauf Tianjin's, Knauf Dongguan's, and/or Knauf Wuhu's, wrongful conduct, Plaintiff has suffered and will continue to suffer damages.

39.  As a result of the foregoing acts and omissions, Plaintiff's Homes require and/or will require extensive reconstruction, repairs, and subsequent related clean-ups, and Plaintiff will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Upon information and belief, Plaintiff will in the future be required to pay for additional repairs and/or replacement costs related to this defective drywall and its removal.

### COUNT II
### NEGLIGENCE AND NEGLIGENCE *PER SE*
### (Against All Defendants)

40.  Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

41.  At all times relevant hereto, Defendants, Knauf Gips, Knauf Tianjin, Knauf Dongguan, and Knauf Wuhu, (hereinafter "Manufacturer Defendants") manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiff's Homes.

42.  The Manufacturer Defendants each had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall the Manufacturer Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause damage as described herein.

-12-

43. The Manufacturer Defendants breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/or selling of drywall that Manufacturer Defendants placed into the stream of commerce in that the Manufacturer Defendants knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, damaging side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes.

44. The negligence of the Manufacturer Defendants, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

   a. manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall without thoroughly and adequately testing it;

   b. selling drywall without performing proper and sufficient tests;

   c. negligently failing to adequately and correctly warn the Plaintiff and the public, of the damaging nature of Manufacturer Defendants' drywall;

   d. negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, damaging and defective;

   e. negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defects;

   f. negligently representing that Manufacturer Defendants' drywall was fit for its intended purpose when, in fact, its fitness is questionable;

   g. negligently distributing drywall in a manner which was damaging to its users;

   h. negligently manufacturing drywall in a manner which was damaging to its users;

i.  negligently processing drywall in a manner which was damaging to its users;

j.

k.  negligently delivering drywall in a manner which was damaging to its users;

l.  concealing information concerning reports of adverse effects from the Plaintiff while knowing that Manufacturer Defendants' drywall was damaging and non-conforming with accepted industry standards; and

m.  improperly concealing and/or misrepresenting information from the Plaintiff and/or the public, concerning the damaging nature of Manufacturer Defendants' drywall and/or the manufacturing defects.

45.  Manufacturer Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/or selling of Manufacturer Defendants' drywall in that they:

a.  failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.  failing to conduct adequate testing to determine the damaging nature of their drywall; and

c.  failing to warn Plaintiff, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

46.  Upon information and belief, despite the fact that Manufacturer Defendants knew or should have known that their drywall caused damages due to its manufacturing defects, Manufacturer Defendants continued to manufacture, process, distribute, deliver, supply, market, and/or sell drywall to the Plaintiff and/or the consuming public.

47.  Manufacturer Defendants knew or should have known that consumers such as Plaintiff would suffer economic damages and/or be at an increased risk of suffering economic damages as a result of Manufacturer Defendants' failure to exercise ordinary care, as well as Manufacturer Defendants' negligent manufacturing process, as set forth herein.

48.  Manufacturer Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

49.  Manufacturer Defendants knew or should have known that homeowners such as the Plaintiff would foreseeably suffer damages, and/or be at increased risk of suffering damages, including financial damages, as a result of Manufacturer Defendants' failure to exercise ordinary care, as well as Manufacturer Defendants' negligent manufacturing process, as set forth above.

50.  Manufacturer Defendants' negligence was the proximate cause of Plaintiff's damages and economic loss which it suffered and will continue to suffer.

51.  As a result of the foregoing acts and omissions, Plaintiff's Homes require and/or will require extensive reconstruction and repairs, and Plaintiff will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs.

52.  At all times herein mentioned, Defendants Springhill, Southern Homes, and Adrian Kornman delivered, supplied, inspected, installed, utilized, and/or sold

drywall used in the construction of Plaintiff's Homes.

53.    The Builder Defendants each had a duty to exercise reasonable care in delivering, supplying, inspecting, installing, utilizing, and/or selling drywall the Manufacturer Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described herein.

54.    The Builder Defendants breached their duty by failing to exercise ordinary care in the delivering, supplying, inspecting, installing, utilizing, and/or selling of drywall the Manufacturer Defendants placed into the stream of commerce in that Builder Defendants knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, damaging side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes and other equipment and items.

55.    The negligence of the Builder Defendants, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

a.    delivering, supplying, inspecting, installing, utilizing, and/or selling drywall without thoroughly and adequately testing it;

b.    selling drywall without performing proper and sufficient tests;

c.    negligently failing to adequately and correctly warn the Plaintiff and the public, of the damaging nature of Manufacturer Defendants' drywall;

d.    negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, damaging and defective;

e.    negligently representing that Manufacturer Defendants' drywall was fit for its intended purpose when, in fact, its fitness is questionable;

f.    negligently installing drywall in a manner which was damaging to its users;

g.    negligently utilizing drywall in a manner which was damaging to its users;

h.    negligently delivering drywall in a manner which was damaging to its users;

i.    concealing information concerning reports of adverse effects from the Plaintiff while knowing that Manufacturer Defendants' drywall was damaging and non-conforming with accepted industry standards; and

j.    improperly concealing and/or misrepresenting information from the Plaintiff and/or the public, concerning the severity of risks and fitness of Manufacturer Defendants' drywall and/or the manufacturing defects.

56.    Builder Defendants were negligent in the delivering, supplying, inspecting, installing, utilizing, and/or selling of Manufacturer Defendants' drywall in that they:

a.    failing to conduct adequate testing to determine the fitness of the drywall; and

b.    failing to warn Plaintiff, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

57.    Upon information and belief, despite the fact that Builder Defendants knew or should have known that the drywall was defective due to its manufacturing defects, Builder Defendants continued to deliver, supply, install, utilize, and/or sell drywall to the Plaintiff and/or the consuming public.

58.    Builder Defendants knew or should have known that consumers such as Plaintiff would suffer damage and economic damages and/or be at an increased risk of suffering damage and economic damages as a result of Builder Defendants' failure to exercise ordinary care.

59.    Builder Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

60.    Builder Defendants knew or should have known that homeowners such as the Plaintiff would foreseeably suffer damages, and/or be at increased risk of suffering damages, including financial damages, as a result of Builder Defendants' failure to exercise ordinary care.

61.    Builder Defendants' negligence was the proximate cause of Plaintiff's damages and economic loss which it suffered and will continue to suffer.

62.    By reason of the foregoing, Plaintiff incurred and/or is at risk of incurring financial damages.

63.    As a result of the foregoing acts and omissions, Plaintiff's Homes require and/or will require extensive reconstruction and repairs, and Plaintiff will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs.

## COUNT III
## PRODUCTS LIABILITY
## (Against All Defendants)

64.    Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

65.    At all times herein mentioned, Manufacturer Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold

drywall used in the construction of Plaintiff's Homes.

66.   Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected, and/or sold by Manufacturer Defendants.

67.   At those times, the Manufacturer Defendants' drywall was in a defective condition which was unreasonably damaging to homes and, in particular, Plaintiff's Homes.

68.   Builder Defendants, as builders of Plaintiff's Homes, are liable as manufacturers under the builder/vendor rule for the redhibitory defects in the drywall and for all damages caused by the defects, including attorney's fees and costs.

69.   Manufacturer Defendants' drywall was so defective in design or formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Manufacturer Defendants' drywall.

70.   At all times herein mentioned, Manufacturer Defendants' drywall was in a defective condition and unfit, and Defendants knew, had reason to know, or should have known that said product was defective.

71.   Defendants knew, or should have known, that at all times herein mentioned Manufacturer Defendants' drywall was/is inherently defective.

72.   Defendants had a duty to create a product that was not unreasonably damaging when used as intended.

73.   Manufacturer Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition by Defendants.

74.   Manufacturer Defendants' drywall was installed, utilized, delivered, supplied, inspected, and/or sold in a defective condition by Builder Defendants and was unreasonably damaging to its intended users, including Plaintiff.

75.   Manufacturer Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold a defective product which created damage to the Plaintiff's Homes.  Manufacturer Defendants are, therefore, strictly liable for the damages and economic injuries sustained by Plaintiff.

76.   Builder Defendants delivered, supplied, inspected, installed, utilized, and/or sold a defective product which created damage to the Plaintiff's Homes.  Builder Defendants are, therefore, strictly liable for the damages and economic injuries sustained by Plaintiff.

77.   Plaintiff, acting as a reasonably prudent person and/or entity, could not discover that Manufacturer Defendants' drywall was defective as herein mentioned.

78.   By reason of the foregoing, the Manufacturer Defendants are strictly liable in tort to the Plaintiff for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and/or selling of a defective product, Manufacturer Defendants' drywall.

79.   By reason of the foregoing, the Builder Defendants are strictly liable in tort to the Plaintiff for the delivering, supplying, inspecting, installing, utilizing, and/or selling

of a defective product, Manufacturer Defendants' drywall.

80.     Manufacturer Defendants' defective design, manufacturing defects, and inadequate warnings of the damages associated with Manufacturer Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Manufacturer Defendants.

81.     Builder Defendants' failure to inspect and inadequate warnings of the damages associated with Manufacturer Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Builder Defendants.

82.     Said defects in Manufacturer Defendants' drywall were a substantial factor in causing Plaintiff's damages and/or placing Plaintiff at increased risk of economic damage.

83.     As a direct and proximate result of the defective condition of Manufacturer Defendants' drywall as manufactured and sold by Manufacturer Defendants, Plaintiff suffered, and will continue to suffer, damages.

84.     By reason of the foregoing, Plaintiff incurred, and/or is at risk of incurring, serious financial damage.

85.     As a result of the foregoing acts and omissions, Plaintiff's Homes require and/or will require extensive reconstruction and repairs, and Plaintiff will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES (La. C. C. Art. 2475, *et. Seq.*)
## (Against All Defendants)

86.   Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

87.   Defendants impliedly warranted that the drywall use in the construction of the Plaintiff's homes was fit, of acceptable quality and standards, and was free of any hidden defects.

88.   Defendants did not conform to these implied representations because the drywall used in the construction of Plaintiff's homes contained hidden defects, was defective, unfit, and is associated with numerous adverse side effects.

89.   Defendants impliedly warranted to Plaintiff that the drywall used in construction of Plaintiff's Homes was efficacious and fit for its intended purpose, that the drywall used in the construction of Plaintiff's Homes was of merchantable quality, did not produce any damaging side effects, and was adequately tested and fit for its intended use.

90.   Defendants impliedly warranted to Plaintiff that the drywall used in construction of Plaintiff's Homes did not contain any hidden defects which rendered the drywall's use so damaging or inconvenient that the Plaintiff would not have purchased the homes had Plaintiff known about the hidden defects.

91.   Defendants knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the drywall used in the construction of Plaintiff's Homes contained hidden defects that rendered the

drywall inappropriate for its intended use, and, in fact, produced severe and extensive damage to Plaintiff's Homes.

92.    Defendants knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that the drywall used in the construction of Plaintiff's Homes contained hidden defects that rendered the use of the drywall so inconvenient that the Plaintiff would not have purchased the homes had Plaintiff known about the hidden defects.

93.    Plaintiffs are entitled to enforce the implied warranties of fitness for a particular purpose and merchantable quality because the drywall that was sold to Plaintiff, whether directly or indirectly, is unfit for its intended use, and Defendants knew that the drywall would be used in construction of Plaintiff's Homes, and the drywall was not appropriate for that use.

94.    Plaintiff is entitled to enforce the implied warranties of fitness for a particular purpose and merchantability because the defects in the drywall existed at the time that Plaintiff purchased the homes and the drywall therein, and Plaintiff, as a reasonably prudent buyer, had no knowledge of the defects when the Homes and drywall therein were purchased, and could not have reasonably discovered the hidden defects.

95.    At the time that Plaintiff entered a contract with the Builder Defendants to purchase Plaintiff's Homes, the Builder Defendants knew that Plaintiff was relying on the Builder Defendants' skill and judgment in selecting and furnishing the drywall that was utilized for this particular purpose.

96.    As a direct and proximate result of the breach of the implied warranties of fitness for a particular purpose and merchantability present in every contract, Plaintiff's Homes require and/or will require extensive reconstruction and repairs, and Plaintiff will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs.

### COUNT V
### FRAUDULENT MISREPRESENTATION
### (Against All Defendants)

97.    Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

98.    Defendants falsely and fraudulently represented to Plaintiff that Defendants' drywall had been tested and was found to be fit and/or appropriate for use.

99.    Those representations made by Defendants were, in fact, false.

100.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

101.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiff and/or the consuming public, all of which evinced Defendants' reckless, wilful, indifference.

102.    At the time the aforesaid representations were made by the Defendants, the Plaintiff were unaware of the falsity of said representations and reasonably

believed them to be true.

103.   In reliance upon said representations, the Plaintiff's Homes were built using Defendants' defective drywall, with Plaintiff thereby sustaining damages and/or being at an increased risk of sustaining damages in the future.

104.   Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

105.   Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damages to homeowners.

106.   Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff.

107.   By reason of the foregoing, Plaintiff experienced, and/or is at risk of experiencing, financial damages.

108.   As a result of the foregoing acts and omissions, Plaintiff's Homes require and/or will require extensive reconstruction and repairs, and Plaintiff will incur repair and replacement costs, repairs for appliances, clean-up costs, incidental, and other related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs.

## COUNT VI
## FRAUDULENT CONCEALMENT
## (Against All Defendants)

109.   Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

110.   At all times material hereto, Defendants misrepresented the fitness of their drywall.

111.   Defendants knew, or were reckless in not knowing, that their representations were false.

112.   Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires, copper tubes, and other metal equipment and objects.

113.   Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

114.   Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

115.   Defendants were under a duty to disclose to Plaintiff the aforementioned defects as they pertain to Defendants' drywall.

116.   Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff and/or the consuming public into reliance and continued use of Defendants' drywall.

-26-

117.    Defendants knew that Plaintiff and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

118.    Plaintiff and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

119.    As a result of the foregoing acts and omissions, Plaintiff's Homes require and/or will require extensive reconstruction and repairs, and Plaintiff will incur repair and replacement costs, repairs for appliances, clean-up costs, incidental, and other related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs.

### COUNT VII
### VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES ACT
### (Against All Defendants)

120.    Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

121.    This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants.

122.    Plaintiff is a "consumer" and the subject transactions are "trade or commerce" as defined by LA. REV. STAT. ANN. § 51:1402.

123.   Defendants' actions and/or omissions as described herein violate LA. REV. STAT. ANN. § 51:1401, *et. seq.*, the Louisiana Unfair Trade Practices and Consumer Law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

124.   Specifically, Defendants misrepresented and omitted material information regarding Manufacturer Defendants' drywall by failing to disclose known risks.

125.   Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Manufacturer Defendants' drywall in violation of LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law.

126.   Defendants violated LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law, by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which it was intended, when Defendants knew it was deceptive, ineffective, damaging, and by other acts alleged herein.

127.   Defendants engaged in the deceptive acts and practices alleged herein in order to sell Defendants' defective drywall to the public, including Plaintiff.

128.   Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law.

129.   As a direct and proximate result of Defendants' violations of LA. REV. STAT. ANN. § 51:1401, *et. seq,* the Louisiana Unfair Trade Practices and Consumer Law, Plaintiff has suffered damages. Plaintiff is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

### COUNT VIII
### BREACH OF EXPRESS WARRANTY
### (Against Builder Defendants)

130.   Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

131.   Plaintiff and the Builder Defendants entered into a contract on September 8, 2006 wherein Plaintiff agreed to purchase Plaintiff's Homes from the Builder Defendants (hereinafter referred to as "Purchase Agreement").

132.   In the Purchase Agreement, Builder Defendants grant an express warranty (hereinafter "Express Warranty") to Plaintiff whereby Builder Defendants expressly warrant that Plaintiff's Homes are free from defects in materials and/or defects in workmanship.

133.   The Express Warranty is effective for a period of three years from the Closing Date as expressly described in the Purchase Agreement.  The Closing Date is defined as September 15, 2006 for 1044, 1089, 1096, and 1100 Clairise Court.

The Closing Date is defined as October 31, 2006 for the remainder of the Homes

134.    The Manufacturer Defendants' defective drywall is a defective material for the purposes of the Express Warranty, which defective material also caused and continues to cause defects in the electrical, plumbing and/or HVAC systems in Plaintiff's Homes as more fully described herein above.

135.    The presence of the defective drywall and defective electrical, plumbing, and/or HVAC systems constitutes a breach of the Express Warranty.

136.    As a direct and proximate result of the breach of the Express Warranty, Plaintiff's Homes require and/or will require extensive reconstruction and repairs, and Plaintiff will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to pay for additional repairs and/or replacement costs.

## APPLICABILITY OF THE NEW HOME WARRANTY ACT

137.    Plaintiff repeats, reiterates and re-alleges the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

138.    Plaintiff submits that the New Home Warranty Act, LA. REV. STAT. ANN. § 9:3141, et. seq (hereinafter NHWA), is not the exclusive remedy available to Plaintiff in its claims against the Builder Defendants and that all counts alleged herein above constitute valid, actionable claims against Builder Defendants.

139.    Out of an abundance of caution, Plaintiff has complied with all requirements of the NHWA and aver that "Count VIII: Breach of Express Warranty" against

-30-

Builder Defendants is a valid claim under the NHWA in addition to being a valid claim for breach of express warranty against Builder Defendants.

140.  Plaintiff has complied with the notice requirements of the NHWA described under LA. REV. STAT. ANN. § 9:3145.

141.  Additionally, Plaintiff's claims against the Builder Defendants asserted under "Count VIII: Breach of Express Warranty", above, remain valid despite the parties' mutual agreement to extend the notice period for breach of warranty due to defects in materials and workmanship from one year to three years, as parties are free to contractually extend the obligations of the NHWA, which establish **minimum** required warranties, under LA. REV. STAT. ANN. § 9:3144(C).

## PRAYER FOR RELIEF

142.  WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

a.  Equitable, injunctive, and declaratory relief;

b.  Damages in an amount to be determined at trial, but in an amount exceeding seventy-five thousand dollars;

c.  Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.  Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

e.  The costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees;

f.  All statutory damages;

g.  Disgorgement of Defendants' profits from the sale of drywall;

h.   Reimbursement for all costs and expenses incurred in the repair of any damages caused by Defendants' defective drywall, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiff may be entitled;

i.   Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, SLIDELL PROPERTY MANAGEMENT, L.L.C., hereby demands a trial by jury as to all issues so triable.

Respectfully submitted:

_____

HUGH P. LAMBERT, T.A.     (LA Bar # 7933)
LINDA J. NELSON           (LA Bar # 9938)
CAYCE C. PETERSON         (LA Bar # 32217)
Lambert & Nelson, PLC
701 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-1750
Facsimile: (504) 529-2931

**PLEASE SERVE:**

**Springhill, L.L.C.**
59101 Amber St.
Slidell, Louisiana 70461

**Southern Homes, L.L.C.**
59101 Amber St.
Slidell, Louisiana 70461

**Adrian Kornman**
59101 Amber St.
Slidell, Louisiana 70461